Our fifth argument of the morning is United States v. Jamell Newbern, appeal number 22-1244. This one's remote, Greg. Okay, very well. We can see both. Counsel, can you hear us from the courtroom okay? This is Ethan Skaggs. I can hear you, Your Honor. Okay. Ms. Scott, can you hear us okay? I can, Your Honor. Thank you. Okay. Good morning to both of you. Mr. Skaggs, you may proceed. Thank you, Your Honor. Good morning. May it please the court. I'm Ethan Skaggs, an assistant federal public defender with the Southern District of Illinois. I'm Jamell Newbern's attorney. Mr. Newbern, back in 2005, was charged with possession with intent to deliver crack. He had a relevant conduct of a little over 50 grams, which put him in the 10-to-life category for sentencing. He had a prior that subjected him to an 851, which when the government filed the 851, put him in a sentencing range of 20-to-life. His guidelines were per offender at 262-327. When the Fair Sentencing Act was applied, Mr. Newbern did not get the benefit of that. He did not get the benefit of that until the first step back came out. Applying the Fair Sentencing Act to Mr. Newbern puts him from the 10-to-life category to the 5-to-40, but with the 851, puts him at a 10-years-to-life. His guideline sentencing range does not change by application of the Fair Sentencing Act. I filed a reduction in the Fair Sentencing Act for Mr. Newbern. Our main arguments are that Mr. Newbern had post-sentencing conduct that should be considered, and that being several things. His classes he took, approximately 460 hours. He got a GED. He worked while he was in Bureau of Prisons, and 15 years into his sentence, he had no disciplinary history. We also asked the court to consider that there were changes in the law. If you applied the current law, his reckless discharge would put him in a situation where he would no longer be a career offender, and so he would be 10-to-life, and his guidelines would go down to 10 years. Of course, Judge Yandel, while we're here, denied the motion to reduce his sentence. It's our contention that the order doesn't show that our arguments have been addressed, and that the record doesn't support that our arguments were addressed. You know, the court has obligations to consider the parties' non-frivolous arguments, and it's necessary to explain and demonstrate the arguments were considered. You know, the order in place, um, very short order, doesn't mention any post-sentencing conduct. It doesn't address, uh, any guidelines changes. With respect to career offender, there is a, I guess you'd say a reference. Uh, the judge notes that Judge Herndon, the previously sentenced judge, uh, who's now sentenced, whether he was a career offender or not, but that's the closest thing to anything really being addressed in the order. You know, the order doesn't look at post-sentencing conduct. That's not mentioned. Uh, the fact that the guidelines would be 10 years is not in the order. You know, again, it's referenced. The only thing referenced is that Judge Herndon, uh, thought that 300 months was appropriate. You know, the difference in circumstances between Judge Herndon and Judge Yandel, of course, is we're talking about 15 years past. Judge Herndon's looking at this case as, uh, and doesn't have the benefit of the 15 years of history. You know, 15 years of no disciplinary action, uh, 15 years of taking the courses. Judge Yandel has that, or she has the opportunity to review that. The, we were looking at the post-sentencing evidence. We think that's very probative here. Obviously, if he had a bad history, the government would have brought that up and said, this man has a bad history you should deny. So, for Mr. Newborn, he has a good history. You know, that combination of the good history while he's incarcerated, the taking advantage of work opportunities, the, um, not getting, excuse me, and the taking the classes, um, that's rehabilitation that should be considered. And the record just doesn't support that that's been considered. So, we understand, of course, just because we can show a great disciplinary record doesn't mean the court has to grant us any relief. Um, just as if he had a bad disciplinary record and that could be shown, doesn't mean the court has to deny him, really. You know, ultimately here, um, you know, we believe it was the court's obligation to look at the evidence and then demonstrate afterwards that it considered the arguments. And with the order that's entered, we don't think the court, um, has shown that the arguments were considered. So, that's all I'd have and I'd ask to restart the rest of my time for rebuttal. Very well, Mr. Skaggs. Thank you. Ms. Scott, we'll turn to you. Yeah, you're, uh, we can't hear you in the courtroom. Check your, uh, button. Sorry about that. I was still on mute. Um, good morning, Your Honors. I represent the Appalachian United States of America. Your Honor, we believe that the judge's order was sufficient. We believe in Paula, we, that this court gave the district court's guidance on what needed to be done and what may be done. Um, in Paula, this court said, look, what a district court must determine the lower penalties and must consider the, uh, updated guideline range. And that's what the judge did. The judge said, hey, look, he's now looking at 10 to life instead of 20 to life. His guideline range stays the same, 262 to 327, just like it was before. And then this court said, okay, the court can consider these other factors. And one of the other factors the court can consider is, um, post sentencing conduct. And that wasn't even in the courts may consider. This was in the courts can consider. So the district court clearly was concerned here by her, her reference to Judge Herndon's. And we, we believe by her reference to Judge Herndon's, um, repeated assertions, which we, we set forth in our brief at the sentencing hearing at the denial of the first 2255, um, and at the 2241 that he would have sentenced him the same, whether or not he was a career offender was what convinced her, um, that this motion should be denied. We believe that she did not make this decision in a vacuum. And I think that having her have to write a longer order, setting out what the judge already said was unnecessary. This court is very, um, can you address Concepcion? Yeah. And let me tell you specifically what I have in mind in Concepcion. Um, the slip opinion that was provided to us by If you look at page 16 of it, where the court says district courts bear the standard obligation to explain their decisions and demonstrate that they considered the party's arguments. And you read that against the backdrop of what the court described permissible arguments being page 14, including, for example, favorable prison conduct, taking advantage of different programming and educational opportunities in prison. You're right to say that Judge Yandel was not compelled to grant relief, but how can you square it with Concepcion? Your Honor, we believe that Concepcion actually helps us. I mean, we believe that despite that language that your honor just pointed out that that, you know, the court can't consider these particular things. Concepcion is very clear that the court does not have to provide this long list of reasons as to why it does not want to. I agree with that. I agree with that. But doesn't Concepcion impose an obligation on the district court just by its terms that the district court consider the principal arguments advanced by the parties? And what okay. And what Mr. Skaggs is saying is that where is it within Judge Yandel's order? You're absolutely right that she doesn't have to write a lengthy order or a lengthy opinion. But what can we look at within the four corners of the order that will give us confidence that she met the Concepcion standard? What language in the order? Well, Concepcion says specifically, Your Honor, that the judge does not have to expressly rebut every argument. And I think that's what the court did. I mean, there's no evidence that she did not consider that this post sentencing conduct. There's no evidence she did not consider this career offender, this difference in the guideline range. In fact, it looks like she did consider the career offender designation. It's it's it's the Concepcion also says that the district court is not may in its discretion dismiss arguments that it does not find compelling without a detailed explanation. So, I mean, we think that Concepcion helps us here. We think that the court, there's no evidence the court did not consider these factors, but that the court didn't find more compelling the idea that his sentence, his criminal history and his prior, the judges, um, uh, insistence on saying, Hey, I'm, I'm going to give you 300 months no matter what, you know, even if you're a career offender or not. And the judge saying, look, I'm going to do the same thing. I believe you deserve 300 months, whether you're a career offender or not. I hear you. I hear what you're saying. I think what you're doing is you're making you you're making the argument that unfortunately didn't prevail in Concepcion. That was, that's the whole point of the dissent that Justice Kavanaugh wrote, that if you start treating these first step back motions as plenary resentencing, then then everything is fair game. And you're back into, um, you know, all of the procedural reasonableness that would attach at original sentencing and all that. The difficulty that I have with your position is that that's the descent. That's not the majority of Concepcion. And when you look at the discussion of the cases that the majority included in its, in its opinion on page 14, for example, I mean, it can't be that those are just there by happenstance. And I agree. I mean, I agree with your honor because, you know, it does say the first step does not require a district court to be persuaded, but it does require a district court to consider the arguments. And I can understand what the court under what the court is saying when the court says, well, how, how do you as an independent body looking at this order know that she did consider that? And we, I think that's the question that you've got it. That's exactly the question. So your honor, I think what we, uh, what we argue in our brief and what we believe is that she did not, that, that the way you can, the way you can consider it is that she's, she made this decision, not in a vacuum. She made this decision with the benefit of all of the, the state and state transcript, the prior, uh, ruling on the 2255 motion, the prior ruling on the 2241. And she looked at those things and she made that decision and she could have considered the other things and just not given a specific reason about them. And we think that that's about, this is the new guideline. This is the new statutory range that that's sufficient. She does not have to say, and even under Shaw and the others, she does not have to say, look, I've considered your post sentencing conduct. And I think that even with your post sentencing conduct, I'm still going to give you 300 months. I don't think she had to, to specifically address each and every argument. That's exactly what all these cases we cited in our brief say. You don't have to address these arguments. Well, that's why Concepcion surprised some of us, but it's, it is the controlling law. Right. And I agree, but it still says, it still says, Concepcion still says, not even in the dissent, but even in the regular order, it says it does not require courts to expressly rebut each argument. And so it does not, the judge did not have to, to rebut each single argument that was made. And that's our point. This post sentencing conduct, the court was not required to say, I specifically am considering your post sentencing conduct and I disregard it. Ms. Scott, Ms. Scott, do you want us to look to the three page order? Is that, is that what you're suggesting that we read into her order? Oh, I'm so sorry. No, go ahead. I was just going to say that I think her order is sufficient. I think we believe that under the case law, her order is sufficient because it, it meets the requirements of Hawaii and she's setting forth her rationale for why she believes that a 300 month sentence is still appropriate and why you should not get a further reduction. She's looking at the prior history. Yeah. All right. You've heard our questions. Okay. Thank you. I think we understand the government's position. Mr. Skaggs, you have anything further? Thank you. Hold on. You got to hit your button too. We can't hear you here. No, your Honor. I do not have anything else. Thank you. Okay. We appreciate the work of both counsel here. We'll take the case under advisement.